May it please the Court, my name is Davina Chen and I represent the appellant Roger Hernandez. Your Honor, this case is all in the facts. A review of these facts show that no matter when the Court performs the analysis, the officer's actions were unreasonable. A reasonable person in Mr. Hernandez's position would not have felt free to terminate that encounter. And the officer did not have reason – did not have objective, articulable facts that would give rise to a reasonable suspicion that criminal activity was afoot. Counsel, how about the initiation of the encounter? Wasn't that voluntary? Yes, Your Honor. So at that point, would you agree that the contact was voluntary between the officer and Mr. Hernandez? When you say the initiation, if you mean when Mr. Hernandez got out of his car, I would agree that that was voluntary. Okay. But he got out of the car to talk to the officer and the officer, with his hand on his firearm, told him to get back into the car. I would submit that that is not voluntary, Your Honor. Mr. Hernandez – Why don't we just say no, thank you. I think I'd rather stand right here. Your Honor, Mr. Hernandez knew that he was the target of this investigation. The officer had pulled up behind him, shined his light at him, and when Mr. Hernandez got out, the officer approached him with his hand on his firearm and asked him to get back into the car. A reasonable person in that position, on a late night, would not feel free to say, no, Your Honor, no, officer, I'd rather stay right here or I'd rather go to the gas station. A reasonable person would follow the officer's orders. Moreover, even if the court doesn't find that to be a stop, certainly everything that happened thereafter was a stop. Before we go on, the district court thought this was ambiguous, right? Yes. I'm not entirely sure. Are we looking to the question of what was in the officer's mind, or are we looking at what was in Mr. Hernandez's mind, or are we looking at what is in a reasonable suspect's mind? A reasonable suspect, Your Honor. So even if the officer had meant, well, I really personally would consider it a great favor that he went back to the car, but of course you're free to go anywhere else. If that's what's going on in the officer's mind, it wouldn't matter. It would not be relevant, Your Honor. What matters is how it would be perceived by a reasonable suspect, a reasonable person. And what did the district court find in this? He found it ambiguous, Your Honor. Okay. And which way does that cut? He thought that the burden fell on your client to carry the burden at that point. I think it really depends on how you characterize it. The court was looking at consent, and the court said, I believe this was a consensual encounter and that the defendant did not bear his burden of proving that there was no consent. If we look at this as a matter of consent, then certainly the government bears the burden of showing that the defendant consented. The district court found it to be ambiguous, and we would argue that ambiguity must fall on the part of the defendant. Therefore, the defendant was ordered back into his car. So in terms of if it's ambiguous, it's the government that bears the burden of showing that there's a consent. You maintain that the district court was simply wrong when it said that it's the suspect that bears the burden, your client bears the burden. Yes. Which is wrong. He got the law wrong. He got it wrong. Okay. Even if the defendant did bear the burden, however, I think that what's interesting about this case is if you stop, if you stop right there, the defendant wins. If you proceed, the defendant still wins. This is a very interesting case because we have a tape of the interaction. We don't always have a tape. So what happens next? He gets back into his car, and what's the very next thing that happens? He is asked for his identification, which he provides. That's okay, right? That's okay. That doesn't turn something that wasn't already a stop into a stop. That's what police do. That is what police do. Okay. While holding his identification, they proceeded to ask him a litany of questions. He asked him what he was doing there, and Mr. Hernandez provided an explanation. Calling it a litany makes it sound so onerous. He asked him a few questions. He asked him quite a few questions, and he asked the questions repeatedly and refused to accept the answers. So, for instance, when he asked what are you doing here, and Mr. Hernandez explained that he was waiting for his girlfriend who was coming from another part of town, that she was running late. What does any of this help you? I mean, asking questions is neither here nor there, right? He can just say I don't want to answer. He asked questions. Does asking him the questions and the fact that he kept asking a lot of questions, does that help your case? I think it does, Your Honor. If you look at the way that the court, that the officer responded when the questions were answered. My client gave very reasonable answers to the questions, and he even asked to corroborate his answers by saying, may I call my girlfriend? I have her. No, I understand what you're saying. What I'm saying, let's say the answers don't add to suspicion, but they also don't add to, don't make it more likely that he was being coerced or that he was being detained, does it? Your Honor, I do think that they do add to that, because he asked to use the telephone, and the officer told him, no, you can't use the telephone. He was asked repeatedly if there was something illegal in his car, and was told, you better tell me now, because when I search it, I find something illegal in the car, you're going to be in bigger trouble. So these weren't just simple questions. They were questions that had coercive impact on my client, and they went on and they went on, and they were not reasonably related to anything that would have, the stop, the original stop, the apparent purpose of the stop was to find out what he was doing there. He answered the question what he was doing there, and the officer continued to ask him questions, very coercive questions. If you listen to the tape, it's clear that the officer repeatedly asked him questions, refused to accept the answers, said, I don't really believe your answers. When my client asked to confirm the answers by calling his girlfriend, the officer said, well, no, you can't call her now. If you check out, you can call her as much as you want. If that doesn't transform this into a stop, Your Honors, I don't know what does. He's asked to speak to someone, and he's told, no, he can't. When his girlfriend called, they tell him to hang up. When he explains that the things in his car are from his storage space, the officer implies he doesn't believe and asks him repeatedly, is there anything illegal in the car? Counsel, what was the effect of the defendant having an identification card as opposed to a driver's license when he was obviously operating the vehicle? Well, it perhaps would have been different if the officer had asked him, may I see a driver's license, may I see a driver's license in registration. But the officer didn't ask him for a driver's license. The record is clear that the officer asked for identification. If the officer had wanted to see a driver's license, he could have simply asked, this is an identification, may I see a driver's license. There was no reason to ask for a driver's license because Mr. ---- But you can't in California have both an ID and a driver's license. Yes, you can. That's outside the record. But, yes, an individual could have both a driver's license and an identification card. And it's ---- They're not mutually exclusive? No, Your Honor. They are not. And in this particular case, the government never introduced any evidence. In fact, there is no evidence that Mr. Hernandez did not have a driver's license. So he did not ask him the next reasonable question. Terry says that you can stop someone and you can ask ---- Most of the time, as far as I know, all the time that anybody has a California ID, it's because they don't have a driver's license, because they can't have a driver's license, or they don't, because their driver's license has been suspended or because they haven't taken the test or whatever. But they need identification. It's such a universal form of identification. It's usually the reason ---- Your Honor, that's outside the record. I, for quite some time, did have both a driver's license and a California identification card, because you cannot have two driver's licenses. So if you'd like to have two forms of identification that you could keep in separate places, you could only have a driver's license. So what you're saying is that the officer couldn't reasonably infer that if this guy had a California ID, he couldn't reasonably infer that he didn't have a driver's license? He could possibly infer that. But the reasonable approach to resolving that question would be to ask, do you have a driver's license? Terry says that you need to take the least intrusive method of investigation. The least intrusive method of investigation of finding out if someone has a driver's license is simply to ask him, do you have a driver's license? I notice that my time is almost up, if I could reserve the remainder. All nine seconds. You got it. We'll hear from the government. May it please the Court, David Willingham on behalf of the United States. Do you agree that the district court got it wrong when it put the burden of proof on the defendant to establish whether that was a command or a request? The district court unartfully phrased it as the burden on the defendant to show consent. However, consent is not the issue in this case. And the district court implied by its finding that and credited that the officer in this case had actually testified that he had asked the defendant for consent, as the district court is entitled to do. So despite the inartful wording by the district court, that shouldn't concern this Court upon review because it is not an issue that needs to be. Where did he get consent to? At what point? Excuse me, Your Honor? You said that the officer asked for the consent. When did he ask that? The officer did not ask for consent. The officer asked for the, as he testified, asked for the driver, Hernandez in this case, to return to the vehicle. That is a request that an officer, upon a person exiting a vehicle, appearing nervous and rapidly approaching him, is entitled to make for his own safety concerns and is a de minimis intrusion upon any individual's liberty interest and does not implicate the Fourth Amendment in this case or any other case. I didn't understand your question to my – your answer to my question at all. You spent about a minute answering my question, and I didn't understand it a bit. With regard to the district court's finding? Yes. The district court was incorrect in implying that the defendant had the burden of consent in this matter. However, the government's position that it – Stop right there, okay? So my – the answer to my question is you agree with the defendant that the district court got the standard wrong. Yes, Your Honor. Okay. So insofar as the district court said the defendant had the burden of showing that this was a command rather than a request and that burden – and he failed in that burden, the district court simply made a mistake. The district court made a mistake in that regard. Insofar as consent mattered, it was the government's burden. If consent were to matter, it would be the government's burden. And the government's argument in this case is that consent is not the issue. Why don't you answer my questions? Yes, Your Honor. The court is correct. If consent were to matter, it would be the government's burden to prove it. I didn't ask whether it would matter. It is the government's burden to prove consent in any case, Your Honor. That is correct.  Now, why isn't it – since the government's claim is that he went back to the car consensually, not according to command, why isn't that the government's burden since you said consent is the government's burden? In this case, it's not a consent analysis. It's whether the defendant would feel – the reasonable person would feel free to decline the officer's question or demand. Well, no. He goes back to his car, and the question is does he do it voluntarily, consensually, or does he do it because he was commanded? That is the question that was analyzed by the district court, and that is the question in this case. And the government's position is in a case where the officer being approached by a defendant in a rapid and nervous manner upon the defendant exiting his vehicle is entitled to direct or ask that defendant to return to the vehicle or step to the side for two reasons. One, it's a de minimis. I know what you're saying. What happens then if he doesn't get into the car? If he does not – But, you know, the officer – say the officer is acting in the interest maybe of his safety or something. He is entitled then to order the person back into the car, and the person has to go. Is that what you're saying? The defendant would be entitled to decline that request as long as he did not continue to aggressively approach the officer, and that would create a different scenario. And that's not what happened here. Should the defendant, for example, leave the scene on foot instead of go to his vehicle or simply return to the curb or something? Would you just answer the question asked – you know, you sort of deflect the questions you've been asked, and then you keep talking about something else. Just can we ask you a question? Would you just answer the question? If he were to decline that request, he would be entitled to do so, and that would not give rise to reasonable suspicion or create the scenario where this would be a stop. So you're saying the officer is entitled to order him back to the car for his safety, but he doesn't have to respond? Yes, Your Honor. And the only caveat to that would be the officer's safety. How can you hold those two thoughts in your mind at the same time? If the officer can order him back to the car, an order from a police officer is not something that any of us can decline. If the officer is entitled to order him – If the officer were entitled to order him – No, you said he's entitled to order him. Yes. So we don't have to use speech and subjunctive here. The government's position is that he was entitled to do so in this case, and that even if the court were to find that that's what he did, that in the Pennsylvania Meet-and-Ask Place, it follows that the officer would be entitled to do that for his own safety concerns. And what gives rise to this authority to command? The court has held in many – Any time an officer walks up to somebody, they're entitled to command them? No, Your Honor. It's when the officer is lawfully present in the area and someone takes – and he is entitled to give a – Is there any situation when an officer is not lawfully present in the area? For example, if it were not, as in the Kerr case, where the officer is cited by the defendant and he had already blocked the egress of the defendant to where the defendant had no choice, there was a court found that the later request or order to exit the vehicle was not lawful. However, that's not what happened in this case. Here, the officer pulled up and simply shined a light on the defendant's vehicle, and it was at that point that the defendant rapidly approached, nervously, according to the testimony in the record, the officer. And the officer's reaction to that, for his own safety concerns, was simply to ask or even order that he return to the vehicle. Do we look at this as a pedestrian stop? The court has held in Kim and Summers, in fact, this is no different. When the officer approaches a parked vehicle that is not being operated and simply engages in an encounter with an individual, it's no different from a pedestrian stop. And the officer is entitled to approach that vehicle and ask questions, including for I.D. and others. It's a little different, I guess, because, I mean, in a regular pedestrian stop on the sidewalk or something, he doesn't order him to go places unless he's actually stopping him, does he? I think it would be an analogous situation where if an officer were to approach a defendant from afar, who was a pedestrian, and then that pedestrian approached the officer in an aggressive manner, as this defendant did, the officer would be entitled to take steps for his own safety concerns with a de minimis request or order to stop him. How aggressive was he? He said, what's going on? As set forth in the record, it's in paragraph 3 of the officer's declaration, the officer testified that the defendant exited the vehicle, approached him rapidly and nervously, and it was at that point that the officer, for safety reasons, asked him to return to the vehicle. Okay. In a different vein, at what point do you think the officer had reasonable or a reasonable officer would have reasonable suspicion? I think at that point. At what point? At what point? It's a closer call at the initial point if the Court were to find that suspicion was necessary when he returned, when he asked him to return to the vehicle. When do you think he had reasonable suspicion? I think he had reasonable suspicion at that point. As the Court will recall from the record. Of what? Reasonable suspicion that the defendant was attempting to – that a wrongdoing was afoot because the defendant was attempting to distance himself from a vehicle that was parked. I'm sorry. A wrongdoing was afoot? That there was a reasonable suspicion that the defendant was engaged in some sort of criminal wrongdoing because the gas station in which he – It doesn't have to be any more specific than that? It does not, Your Honor. It only has to be specific that the officer would have reason to believe for articulable facts that the defendant or the person involved was engaged in some sort of criminal activity. It does not need to be specific to the point for reasonable suspicion. In a probable cause scenario, it would need to be more specified, but not for reasonable suspicion. And in this case, the officer knew. So what would he have been suspicious of? I mean, you still have to have some possible – I mean, there was – what? Based upon the officer's experience in the area, he knew that it was a high-crime area and a site of numerous drug arrests from his own experience, that the gas station or at least the convenience store itself was closed and the defendant was not at the pumps. And he also knew at the time that he approached the vehicle, the defendant acted in a way that he would be entitled to infer that he was distancing himself from the vehicle or the officer could infer the contents there. Did he distance himself by vehicle, by walking towards the police officer? Yes, Your Honor. That's not a very smart criminal. Not a very smart criminal. But if he were to walk away and simply terminate the encounter at that point, there would be no seizure and no reason for the seizure on the officer's part. The officer would then be free to investigate, of course, the vehicle itself. But there would be no seizure of the person. In this case, the defendant – But if he had said – walked the other way and he said, stop and get back in your vehicle, I mean, let's say instead of walking towards the officer, he walked sideways. Officer, stop, go back to your vehicle. That would constitute a seizure of the person and would require some sort of reasonable suspicion for that. But that's not what happened in this case. Whereas if you're walking towards him, it doesn't? There is no safety concern for the walking away from the officer. If he's walking towards him in the nervous and rapid manner that this defendant was, that would create a safety concern for any reasonable officer that he would find the need to react to. And that would authorize him again to do what? I mean, it would authorize him to pat him down, I suppose, if he came within patting distance. But where does he get authority to tell him, go step back in the car? It follows if he can order a defendant out of the vehicle. And there's no case on this, Your Honor. But it follows if an officer is allowed lawfully to order someone out of a vehicle for safety concerns, he can order someone who is approaching him in that manner. But that follows from Terry. Terry is pretty clear that if you have a basis for talking to the person, it can't just? It has to be something. It has to be a reasonable suspicion or something that you already have. And you have a? So you have a basis for being close to them. You have authority to pat them down to make sure they don't have a weapon that they can hurt you with. I mean, they're sitting in the car. It's hard to pat them down. So it follows that you can tell them step out so you can make sure they see the hands and pat them down. But I'm not sure I know a case or any case for me to infer that you can tell somebody simply as a safety precaution, go back and sit in your car. There is no case law directly on point either in this circuit or others that the government has found. And just no case. What again is your position if you said, no, officer, thank you very much. I'd prefer not to. What do you think would have happened then? The officer would not be entitled or reasonable suspicion at that point would not? If your position is that he's entitled to order him back in the car, which you said now three or four times, and then the guy is not free to say no. I would gather that at that point, if he says no, officer, thank you very much, I'd rather not, that the officer could arrest him or wrestle him to the ground or pull his gun. Right? I mean, it follows from what you just said. To be specific, the defendant should be free to walk away from that encounter, but the officer should be free and any reasonable officer should be free to stop the aggressive conduct of the person who is approaching him in that regard with a de minimis request or order that is not violative or implicating the Fourth Amendment. So this is an order that, in your view, he can give the order, but an order that need not be followed literally. It need not be followed literally. The defendant in this case simply needs to stop approaching or in any case would simply need to stop approaching the officer. Why wouldn't stop be a more appropriate thing for him to say? Stop right there. Don't move. Don't come any closer. That I can certainly see as a safety measure. Look, don't come close enough to me to be able to pull a knife. Stop right there. Don't come any closer. That I can see, but go back and sit in your car? Yes, Your Honor. That would be a more less intrusive way. What if he had said, what I want you to do is I want you to lie on the ground and spread evil? That would certainly be an intrusive method of stopping the conduct. It would make sure that the officer doesn't get attacked, right? Yes, it would. However, it still would be more intrusive than requesting or even ordering the defendant to go back to his vehicle. In this case, the split moment. This is not intrusiveness. What we're looking for is whether or not it's a command, whether or not his going back to the car was consensual or whether it was subject to a command, was reasonably perceived as a command. And if the officer says as a safety measure, which you said he can take care of his own safety, says, look, I want you to lie on the ground and spread evil right now, the guy could say, no, thank you, officer. I don't find that a comfortable position. I think I'd rather stand here with my hands in my pockets. I don't think that would cut my choice. I don't think anybody, most people would be foolish enough to say that kind of thing at 11 o'clock at night when they're facing an armed officer in a parking lot. Yes, the reasonable person would refer that to be a command and the court would likely include, count that as a seizure. The reasonable person would perceive the go back and sit in your car as a command, too. Yes, but the question is would he feel free to do that? Not yes, but would receive a command. If it were to be a command, yes. If he was ordered go back to the vehicle now, that would certainly be a command. If he was asked, would you please refer to him? It doesn't matter what's going on in the officer's head. You've already said that, right? Correct. The question is what is in the head of the person receiving, you know, perceiving the words and perceiving the officer speaking, okay? And somebody in that situation facing the officer in the middle of the night, officer with hand on his gun, and the officer says go back to your car, would perceive that to be a command. There's really no dispute on that point. The reasonable person may ask. Why'd you say yes or no? Yes, Your Honor. The reasonable person may conceive that to be a command. In this case, however. That's not what I asked. Would. Would, Your Honor. There we go. In this case, Your Honor, because the officer. Why isn't that another case? It's not the. Why isn't that another case? You know, at that point he's been commanded. The officer had no reason of suspicion at that point at all. He issued a command that the guy was not free to go. This was huge. That a reasonable person would not have been free to disregard. Why isn't everything that happened from then on in a seizure? For two reasons, Your Honor. First, the officer. One good reason is always best. But if you have to, I'll listen. Yeah. For two reasons. First, the officer knew the following facts at the time, if he did issue a command, did so. He knew that the defendant was parked at a closed convenience store. He knew that it was a late hour. He knew that it was a high crime area. He knew that there were numerous drug arrests within the vicinity. So you think he had reasonable suspicion at that point? At the point he said go back to your car? Yes, Your Honor. If you lose on that. If we lose on that. As you're very likely to. If we lose on that. If there is no reasonable suspicion from that point. The government, for the second reason, would argue that the officer, for this de minimis intrusion on an individual's liberty, is entitled to take steps to ensure his own safety, not resulting in a Fourth Amendment violation. And even if it was an order, he could then proceed to order the defendant to go back to his vehicle. It's a de minimis intrusion in this case. It's not as if he did order him, spread Eagle, onto the ground. And simply continue with his encounter with the defendant following that point, following the insurance of safety. So even, let me just make sure I understand. So even if he has no reasonable suspicion, it's just some guy in a parking lot, and there is no reasonable suspicion because by hypothesis you have got that point because you lost on your first good argument. The officer can say for safety, spread Eagle, on the ground. He could say that, right? No, the government would not argue that he could order the defendant to the ground. I don't know whether he would argue it or not. I'm asking you whether he could. I'm not saying that would be your choice to argue. I mean, let's say that were the case. Would you defend that? No, Your Honor. The government does not conclude that that is a de minimis intrusion on Fourth Amendment. That would actually be a seizure. Okay, but he can tell him, go back and sit in your car. Yes, Your Honor. Even though that's a command, that's perceived to be given a command, expected to be followed a command, the guy can't just say, no, thank you, officer, I'd rather not. But that makes it not a seizure, even though he is not free to do so, and even though there's no reasonable suspicion otherwise. Yes, Your Honor. And what, again, justifies that or justifies giving that kind of command? I understand if Terry stopped, you can pat him down to ensure safety. But what authority says he can give him commands like that? Under Pennsylvania v. MIMS, and as this circuit is held in Rubicavo v. Los Angeles, enforcing the same principle, an officer is entitled for his own legitimate safety concerns to take steps, like ordering a defendant out of a car for a de minimis intrusion that does not implicate the Fourth Amendment concerns. And in this case, it would follow, similarly, that if you can order the defendant out of the vehicle for your own safety concerns in order to control the situations having no Fourth Amendment effect, then you can do so for your own safety concerns to simply order or even ask the defendant to return to the vehicle, and it would be a minimal intrusion in the person's life. Even in the case where there was no suspicion? Even in the case where there was no suspicion, yes. There was a case where there was no suspicion when he was ordered out of the car? Yes, Your Honor, in the Kim matter, where the DEA... You cited Rubicavo, right? Excuse me? You cited Rubicavo. Yes. Let's take it one case at a time. In that case, there was no suspicion? In that case, the Court held that it was a voluntary encounter when the DEA agents blocked the defendant's car and ordered him out of the vehicle in order to conduct the questioning that they did. The defendant complied. The Court held that even though there was a blocking of the egress, the Court found that there was no other evidence of coercion at that point, that's at 1430 of the Kim case, and that the disparity between any auto or pedestrian stop dissipates if the car was parked. This is a very similar situation. What's the name of the case again? I know it's in your brief, but... That's the Kim case at 25 F 3rd, 1426. In this case, and the Court also focused upon the phrasing of the questions to the defendant in that matter. Here we have even the benefit of the transcript and the audio tape that... Was that tape on at this point in the encounter? Was it on when he asked him to go back to the car? It was not on at that point. It was on at a later time in the encounter. And that is a case where here, as here, the phrasing of the questions is clear. It's in the record that the officer was asking in a monotone manner and asking questions politely of the defendant, and the defendant could feel free, as he did so later in terms of declining the consent to search the vehicle, feel free to say no at any time. But the transcript, I don't know. Well, we've got the, we can read the transcript. When he tells him don't make any phone calls, you don't think that's a command? As the Court, I don't believe that that's a command at the time. And in the record, it's clear... When he says call, tell the guy you're going to call him back, he receives a call, he says tell him you're going to call him back. It's clear that immediately upon the defendant asking for, to make a phone call, the officer said no, just hang tight, wait a minute, and you can ask, make as many phone calls as you'd like. The phone rang immediately thereafter. And in this case, the officer did not impede his ability to answer that call, and then asked him to hang up and call the person back when he had a question to ask. And you don't think that's a command either? That would be a command. That would be a command in this case. But at that point, there were many things that were known to the officer, including the questionable answers on the part of the defendant, including the fact that he had noticed that the pupils were... Or he had noticed that the defendant was nervous and couldn't sit still in his car and talking rapidly. The defendant had stated that he was waiting there with bags in his car for his girlfriend to go see a movie or a late dinner, and the officer would be entitled to infer that that wouldn't be likely in this case. All of those add up to reasonable suspicion in addition to the previous factors. Okay. Thank you. We have about nine seconds left. We'll give you a minute. How about that? One minute. Briefly, very briefly, Your Honors. First of all, the government's contention that an officer's safety concerns allows them to make commands and somehow empties out those commands of any Fourth Amendment content is just inaccurate. Terry v. Ohio is a case in which the court held that you could stop and frisk someone, but only if you had reasonable suspicion for the stop and further suspicion that you were at risk for the frisk. Counsel, doesn't Terry also say, though, that the officer can ascertain the identity of the individual? Yes. And in this case, he tried to ascertain the identity, but that occurred after the initial stop, which is when he was ordered back into the car. And second, the government apparently contends that at that moment, when my client was either asked or ordered back into the car with the officer's hand on his gun, that there was reasonable suspicion. I would direct the courts to U.S. v. Kerr and Brown v. Texas, which make it clear that being in an area in which crimes may have occurred and acting slightly suspiciously in Kerr, someone was taking boxes out of a house in the neighborhood where there had been a lot of residential burglaries. In Brown v. Texas, individuals were in an alley where there was a lot of drug trafficking, and when they saw the police arrived, they walked apart and left the police. In both of those cases, the courts have held there's no reasonable suspicion. In this case, it's clear that at the moment when Mr. Hernandez was ordered back into his truck, there was no reasonable suspicion, and therefore, that stop wasn't constitutional. Okay. Thank you. Judge Azar, you'll stand for a minute. We'll next hear argument in United States v. Romero.
judges: Canby, Kozinski, Rawlinson